N THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 20 - |
| v. | : | Date Filed: |
| DONALD DOUGHERTY<br>MICHAEL MCKALE | : | VIOLATIONS:<br>18 U.S.C. § 371 (conspiracy to defraud the United States - 1 count) |
| | : | 26 U.S.C. § 7206(1) (making and subscribing to false federal income tax returns - 6 counts) |
| | : | 26 U.S.C. § 7206(2) (aiding and assisting in the preparation and presentation of false federal income tax returns - 3 counts) |
| | : | 18 U.S.C. § 1014 (false statement to a bank - 1 count) |
| | : | 18 U.S.C. § 1344 (bank fraud - 1 count)<br>18 U.S.C. § 1027 (false statements - ERISA - 10 counts) |
| | : | 18 U.S.C. § 664 (theft from employee benefit plans - 18 counts) |
| | : | 18 U.S.C. § 2 (aiding and abetting)<br>Notice of Forfeiture |

## I N D I C T M E N T

### COUNT ONE
(Conspiracy to Defraud the United States)
18 U.S.C. § 371

THE GRAND JURY CHARGES THAT:

At all times material to this indictment:

### Background

1.     Defendant DONALD DOUGHERTY was the President and sole shareholder of

Dougherty Electric, Inc. ("Dougherty Electric" or "DEI"), an electrical contracting business

incorporated in 1996.  Dougherty Electric had offices at 45 Porter Street and, later, at 1900 Arch

Street, Philadelphia, Pennsylvania. Defendant DOUGHERTY, through Dougherty Electric, employed union electricians who were members of IBEW Local Union 98, in Philadelphia, and IBEW Local Union 5, in Pittsburgh.

2.    Defendant DONALD DOUGHERTY took a salary and had corporate earnings through his role as President of Dougherty Electric. For example, during 2011, when Dougherty Electric had gross business receipts of approximately $9.6 million, defendant DOUGHERTY reported personal taxable income of $291,077, which was based on his salary of $97,444 and corporate earnings from DEI. In 2012, when Dougherty Electric had gross receipts of $17,021,081, defendant DOUGHERTY reported taxable income of $1,401,585 arising from his salary and corporate earnings from DEI. In 2013, when Dougherty Electric had gross business receipts of approximately $27.4 million, defendant DOUGHERTY reported taxable income of $2,436,146 arising from his salary and corporate earnings from DEI. Moreover, commencing in 2012 and continuing until 2016, defendant DOUGHERTY paid his wife a yearly salary of approximately $166,400 for work she purportedly performed for Dougherty Electric.

3.    Defendant DONALD DOUGHERTY resided in a 5000 square foot home in the South Philadelphia section of Philadelphia, Pennsylvania. The residence contains four bedrooms, three and a half bathrooms, an in-ground pool, a partially finished basement with a wet bar, theater, bowling alley, and a roof-top deck with a bar and hot tub. The home was renovated into a single-family home from multiple adjoining row homes at a cost of approximately $2,000,000. As of 2013, it had an appraised value of approximately $1,100,000.

4.    Wells Fargo Bank held three mortgages on the residence, on which defendant DONALD DOUGHERTY and his wife, D.D., owed a total of approximately $1,711,382 as of 2011.

5.      Defendant DONALD DOUGHERTY elected that Dougherty Electric, Inc. be taxed under Subchapter S of the Internal Revenue Code.  Therefore, Dougherty Electric filed a U.S. Income Tax Return for an S Corporation, IRS Form 1120S, which reported Dougherty Electric's corporate income.  Defendant DOUGHERTY then reported the taxable corporate income on his U.S. Individual Income Tax Return, IRS Form 1040, from which he paid personal federal income tax.

6.      Defendant DONALD DOUGHERTY and D. D., his wife, filed separate personal federal income tax returns, which were prepared by Accountant A. Defendant DOUGHERTY also retained Accountant A to prepare Dougherty Electric's corporate tax returns.

7.      The personal and corporate returns filed by defendant DONALD DOUGHERTY included, above the signature line, the following statement: "Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete."

8.      Under federal tax law, Dougherty Electric was permitted to deduct ordinary and necessary business expenses from its gross income to determine its taxable income.  Those business expenses included reasonable salaries for personal services actually rendered. Dougherty Electric recorded these business expenses in its accounting system and used them to prepare tax returns.  Corporate expenditures for non-business purposes, such as payments for the benefit of defendant DONALD DOUGHERTY and his family, were to be properly classified as shareholder distributions, as opposed to business expenses, and were not deductible.

9.      On or about October 31, 2012, approximately five weeks before his wife purchased a New Jersey shore condominium for $907,500, defendant DONALD DOUGHERTY

3

caused his wife to be placed on the Dougherty Electric payroll, at a salary of approximately $166,400 per year. From October 2012 through January 2016, at the direction of defendant DOUGHERTY, DEI paid his wife approximately $531,200, even though she performed no work for Dougherty Electric in return for her salary.

10.    In December 2012, defendant DONALD DOUGHERTY cosigned a $600,000 promissory note held on the New Jersey condominium purchased by his wife. From in or about November 2012 to in or about January 2014, defendant DOUGHERTY caused Dougherty Electric to spend in excess of $850,000 toward the purchase and renovation of the condominium. In January 2017, defendant DOUGHERTY caused Dougherty Electric to spend approximately $500,000 to pay off the promissory note held on his wife's condominium.

11.    Defendant MICHAEL MCKALE was an accountant, and during 2013, while employed at an accounting firm, reviewed financial records of Dougherty Electric to prepare its financial statements. During October 2014 through February 2015, and during January 2016 through approximately June 2018, defendant DONALD DOUGHERTY employed defendant MCKALE. Defendant MCKALE was responsible for the accuracy of Dougherty Electric's financial records, including the proper characterization of business expenses and shareholder distributions in Dougherty Electric's accounting system, which was used to prepare Dougherty Electric's corporate returns and defendant DOUGHERTY's personal income tax returns.

12.    In or about November 2015, defendant DONALD DOUGHERTY became aware that an anonymous letter, dated November 4, 2015, and signed by "Concerned Contractors of S.E. PA," was distributed to federal law enforcement entities, including the Internal Revenue Service. The letter alleged, among other things, that defendant DOUGHERTY used Dougherty Electric labor to renovate his wife's shore home and that his wife had a no-show job with the

company. After defendant DOUGHERTY became aware of the letter, he hired Accountant B to examine Dougherty Electric's accounting records for the years 2012 through 2015. Accountant B identified numerous business expense entries related to the renovation of defendant DOUGHERTY's wife's shore condominium, and other business expense entries, which appeared to be personal expenditures.

### The Conspiracy

13.    From in or about October 2014, through in or about July 2017, in the Eastern District of Pennsylvania, and elsewhere, defendants

### DONALD DOUGHERTY and
### MICHAEL MCKALE

conspired and agreed with each other, and others known and unknown to the grand jury, to knowingly defraud the United States by willfully impeding, impairing, obstructing, and defeating the lawful functions of the Internal Revenue Service of the Department of the Treasury ("IRS") in the ascertainment, computation, assessment, and collection of income taxes, that is, by filing false tax returns, in violation of Title 26, United States Code, Section 7206.

### Object of the Conspiracy

14.    The object of the conspiracy was for defendant DONALD DOUGHERTY to pay less federal income tax than he was legally required to pay, by falsely and improperly claiming personal expenses and other nonbusiness expenses as legitimate business deductions against Dougherty Electric's corporate income. In amended income tax returns for tax years 2012 through 2014, and in tax returns for tax years 2015 and 2016, defendant DOUGHERTY knowingly claimed a total of approximately $1.16 million in improper business expense deductions, which caused a tax loss of approximately $416,299.

## The Manner and Means of the Conspiracy

15.     In furtherance of their conspiracy, defendants DONALD DOUGHERTY and

MICHAEL MCKALE, and others known and unknown to the grand jury, employed the

following manner and means, among others:

### Misrepresenting personal expenses as deductible business expenses

16.     Defendant DONALD DOUGHERTY unlawfully caused Dougherty  Electric to

make expenditures for his personal benefit and the benefit of his family, such as his wife's salary

from her no-show job at Dougherty Electric and for a Cadillac Escalade and a Range Rover used

by his wife solely for personal purposes, to be improperly recorded in Dougherty Electric's

accounting system as legitimate business expenses to be deducted against Dougherty Electric's

corporate income to reduce its taxable income.   On amended income tax returns for tax years

2012 through 2014, and in tax returns for tax years 2015 and 2016, defendant DOUGHERTY

unlawfully claimed a total of approximately $649,200 of these improper business deductions on

Dougherty Electric's corporate tax returns and reported the false taxable corporate income on his

personal income tax returns.

17.     At defendant DONALD DOUGHERTY's direction, and while working remotely

away from DEI's office, defendant MICHAEL MCKALE secretly changed properly recorded

shareholder distributions corresponding to DEI expenditures for defendant DOUGHERTY's

personal use to false Dougherty Electric business expenses on Dougherty Electric's accounting

system.  These false and improper business expenses were claimed as deductions against

corporate income on Dougherty Electric's corporate returns, and illegally reduced Dougherty

Electric's corporate income and defendant DOUGHERTY'S personal taxable income.  For

example:

6

a.    Between November 2014 and February 2015, at defendant DONALD

DOUGHERTY's direction, defendant MICHAEL MCKALE made approximately 38 false and

improper entries to the accounting system, in which he changed properly characterized

shareholder distributions, which were DEI expenditures for the benefit of defendant

DOUGHERTY and his family, and had no legitimate business purpose, to business expenses.

Defendant MCKALE's changes totaled approximately $31,500, and falsely characterized, among

other things, personal insurance costs, cash withdrawals by defendant DOUGHERTY, and home

improvement expenditures as business expenses for 2014 and 2015.

b.    Beginning in or about February 20, 2016, and continuing through on or

about September 18, 2016, at defendant DONALD DOUGHERTY's direction, defendant

MICHAEL MCKALE made approximately 132 improper entries to the accounting system, in

which he changed properly characterized shareholder distributions, which were DEI

expenditures for the personal benefit of defendant DOUGHERTY and his family, and had no

legitimate business purpose, to business expenses.  Defendant MCKALE's changes totaled

approximately $267,600, and falsely characterized Dougherty Electric expenditures for a family

vacation to Miami, expenses related to defendant DOUGHERTY's personal residence, his wife's

shore condominium, and other clearly personal expenses, as business expenses for 2015 and

2016.

### Filing false amended tax returns for the years 2012 through 2014.

18.    After defendant DONALD DOUGHERTY learned about the anonymous letter

provided to the Internal Revenue Service, which alleged, among other things, that defendant

DOUGHERTY used Dougherty Electric labor to renovate his wife's shore home and that his

wife had a no-show job with the company, defendant DOUGHERTY set about to file amended

returns for years 2012 through 2014. As part of this effort to file amended returns:

      a.     Defendant DONALD DOUGHERTY hired Accountant B to examine

Dougherty Electric's accounting records for the years 2012 through 2015. Accountant B created

a report which identified numerous business expense entries related to the renovation of

defendant DOUGHERTY's wife's shore condominium, and other business expense entries,

which appeared to be personal expenditures.

      b.     In or about August 2016, based on Accountant B's findings, and on the

advice of Accountant A, who had previously prepared tax returns for defendant DONALD

DOUGHERTY and DEI, defendant DOUGHERTY filed amended tax returns for tax years 2012

through 2014, and paid an additional $73,866 in personal taxes.

      c.     Defendant DONALD DOUGHERTY caused the filing of false amended

returns because defendant DOUGHERTY never told Accountant A or Accountant B that his

wife did no work to justify her DEI salary, and therefore again claimed illegal business

deductions, totaling approximately $449,600, for his wife's salary and automobile expenses. On

the amended returns, defendant DOUGHERTY also continued to falsely claim approximately

$79,700 in other personal expenditures as business deductions.

    19.     Defendant DONALD DOUGHERTY filed tax returns for tax years 2015 and 2016

which claimed illegal business expense deductions based upon his wife's salary and car expenses

from her no-show job at Dougherty Electric, and which claimed illegal business expense

deductions brought about by the fraudulent changes defendant MICHAEL MCKALE made to

DEI's accounting records. As a result, defendant DOUGHERTY'S personal taxable income was

falsely reduced, and he paid approximately $92,913 less in taxes for years 2015 and 2016 as a result of the improperly claimed business expenses.

## OVERT ACTS

In furtherance of the conspiracy to file false tax returns and to effect its unlawful object, the defendants, and others known and unknown to the grand jury, committed the following overt acts, among others, in the Eastern District of Pennsylvania and elsewhere:

1.    On or about January 16, 2015, defendant MICHAEL MCKALE changed six correct shareholder distribution entries for approximately $1,725 of electrical equipment purchased for defendant DONALD DOUGHERTY's home, by deleting the defendant's home address from the entries, and falsely describing them as construction costs for the DEI offices, and DEI repair and maintenance costs for 2014.

2.    On or about February 3, 2015, defendant MICHAEL MCKALE changed a correct $1,500 shareholder distribution entry for painting at the defendant's home to a false Dougherty Electric business, by deleting the defendant's home address from the entry and making it a false DEI repair and maintenance cost for 2014.

3.    On or about July 27, 2015, defendant DONALD DOUGHERTY filed his United States Individual Income Tax Return, Form 1040, for calendar year 2014, which falsely reported taxable income, derived, in part, from improperly claimed business expense deductions totaling approximately $379,800, including $178,000 in salary and car expense deductions for his wife's no-show job at Dougherty Electric, approximately $170,300 for free work performed by DEI for a DOUGHERTY associate, and approximately $31,500 in business deductions derived from defendant MICHAEL MCKALE's false entries in Dougherty Electric's accounting system, which

changed correctly-entered Dougherty Electric shareholder distributions for defendant

DOUGHERTY's personal use to false Dougherty Electric business expenses.

      4.      On or about February 20, 2016, defendant MICHAEL MCKALE changed a

correct $4,500 shareholder distribution entry for the rental of a Cadillac Escalade during a

DOUGHERTY family vacation to Miami, Florida, and made it a false DEI travel expense for

2015.

      5.      On or about March 20, 2016, defendant MICHAEL MCKALE changed a correct

$1,639.97 shareholder distribution entry for "Wildwood Condo Association - 2015 - 2016

Insurance Premium," involving insurance premiums for defendant DONALD DOUGHERTY's

wife's New Jersey condominium, by deleting the correct description of the expenditure from the

entry and making it a false DEI insurance expense for 2015.

      6.      On or about March 20, 2016, defendant MICHAEL MCKALE changed a correct

$4,067.87 shareholder distribution entry for homeowner's insurance for defendant DONALD

DOUGHERTY's home and made it a false DEI insurance expense for 2015.

      7.      On or about March 20, 2016, defendant MICHAEL MCKALE changed a correct

$900 shareholder distribution entry for shutters at defendant DONALD DOUGHERTY's home,

by deleting defendant DOUGHERTY's home address from the entry and making it a false DEI

subcontractor expense for 2015.

      8.      On or about March 20, 2016, defendant MICHAEL MCKALE changed two

correct shareholder distribution entries totaling $6,975 for the cost of maintaining the pond at

defendant DONALD DOUGHERTY's home and made them false DEI subcontractors expenses

for 2015.

9.      On or about March 20, 2016, defendant MICHAEL MCKALE changed a correct $25,000 shareholder distribution entry corresponding to the withdrawal of $25,000 in DEI funds which were deposited into defendant DONALD DOUGHERTY's personal bank account and made it a false DEI subcontractor expense for 2015.

10.      On or about March 20, 2016, defendant MICHAEL MCKALE changed a correct $8,164 shareholder distribution entry corresponding to the payment of defendant DONALD DOUGHERTY's delinquent personal tax bill to the City of Philadelphia Department of Revenue and made it a false DEI taxes - property expense for 2015.

11.      On or about March 20, 2016, defendant MICHAEL MCKALE changed a correct $1,602 proper shareholder distribution entry for a payment for defendant DONALD DOUGHERTY's home electric bill, by deleting defendant DOUGHERTY's home address from the entry and making it a false DEI utilities expense for 2015.

12.      On or about March 20, 2016, defendant MICHAEL MCKALE changed two correct shareholder distribution entries for repairs to defendant DONALD DOUGHERTY's home, in the total amount of $1,400, by deleting defendant DOUGHERTY's home address from the entries and making them false DEI repair and Maintenance costs for 2015.

13.      On or about March 23, 2016, defendant MICHAEL MCKALE changed two correct shareholder distribution entries for the payment of a suite and a room at the Miami Ritz Carlton Hotel during a DOUGHERTY family vacation to Miami, Florida, in the total amount of approximately $25,000, and made them false DEI travel expenses for 2015.

14.      On or about June 24, 2016, defendant MICHAEL MCKALE changed a correct $50.62 shareholder distribution entry for the cost to a personal beer delivery, by deleting the description of the cost and making the entry a false DEI auto and truck expense for 2015.

15.    On or about August 1, 2016, defendant DONALD DOUGHERTY filed his United States Individual Income Tax Return, Form 1040, for calendar year 2015, which falsely reported taxable income derived from improperly claimed business expense deductions totaling approximately $411,600, including approximately $174,500 in salary and car expense deductions for his wife's no-show job at Dougherty Electric, and approximately $237,100 in deductions for personal expenditures derived from defendant MICHAEL MCKALE's false and improper entries to Dougherty Electric's accounting system, which changed correctly-entered Dougherty Electric shareholder distributions for DOUGHERTY's personal uses to false Dougherty Electric business expenses.

16.    On or about August 12, 2016, defendant DONALD DOUGHERTY filed his amended United States Individual Income Tax Return, Form 1040X, for calendar year 2012, which falsely reported taxable income derived, in part, from improperly claimed business expense deductions totaling approximately $81,700, including deductions his wife's no-show job salary and car costs at Dougherty Electric, and deductions for design costs for his wife's New Jersey condominium.

17.    On or about August 12, 2016, defendant DONALD DOUGHERTY filed his amended United States Individual Income Tax Return, Form 1040X, for calendar year 2013, which falsely reported taxable income, derived, in part, from improperly claimed business expense deductions totaling approximately $197,700 for his wife's no-show job salary and car costs at Dougherty Electric, and approximately $40,500 in deductions for design costs for his wife's New Jersey condominium.

18.    On or about August 12, 2016, defendant DONALD DOUGHERTY filed his amended United States Individual Income Tax Return, Form 1040X, for calendar year 2014,

which falsely reported taxable income derived from improperly claimed business expense

deductions totaling approximately $379,800, including approximately $178,000 in salary and car

expense deductions for his wife's no-show job at Dougherty Electric, approximately $170,300 for

free work performed by DEI for an associate of defendant DOUGHERTY, and approximately

$31,500 in deductions for business expense deductions derived from defendant MICHAEL

MCKALE's false and improper entries to Dougherty Electric's system, which changed correctly-

entered Dougherty Electric shareholder distributions for defendant DOUGHERTY's personal

uses to false Dougherty Electric business expenses.

19.    On or about August 14, 2016, defendant MICHAEL MCKALE changed a correct

$1,102.39 shareholder distribution entry for the cost of a personal boating accessory by making

the entry a false DEI auto and truck expense for 2016.

20.    On or about July 31, 2017, defendant DONALD DOUGHERTY filed his United

States Individual Income Tax Return, Form 1040, for calendar year 2016, which falsely reported

taxable income derived from improperly claimed business expense deductions totaling

approximately $53,900, including salary and car expense deductions for his wife's no-show job at

Dougherty Electric, and approximately $29,000 in deductions for personal expenditures derived

from defendant MICHAEL MCKALE'S false and improper entries to Dougherty Electric's

system, which changed correctly-entered Dougherty Electric shareholder distributions for

defendant DOUGHERTY's personal uses to false Dougherty Electric business expenses.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
### (Filing a False Federal Income Tax Return)
### 26 U.S.C. § 7206(1)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Paragraphs 1, 2, and 5 through 12, and Overt Acts 1 through 20 of Count One are incorporated here.

2.     On or about July 27, 2015, in Philadelphia, in the Eastern District of Pennsylvania, defendant

### DONALD DOUGHERTY,

a resident of Philadelphia, made and subscribed to a United States Individual Income Tax Return, Form 1040, for calendar year 2014, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which income tax return defendant DOUGHERTY did not believe to be true and correct as to every material matter. The return identified a false personal taxable income which was derived from improperly claimed business expense deductions totaling approximately $379,800 during 2014, including approximately $178,000 in salary and car expense deductions for his wife's no-show job at Dougherty Electric, approximately $170,300 in deductions for free work performed by DEI for a DOUGHERTY associate, and approximately $31,500 in deductions for personal expenditures, including cash withdrawals and home expenses, such as electrical, utility, painting, and insurance costs.

In violation of Title 26, United States Code, Section 7206(1).

## COUNT THREE
### (Filing a False Federal Income Tax Return)
### 26 U.S.C. § 7206(1)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.　　Paragraphs 1, 2, and 5 through 12, and Overt Acts 1 through 20 of Count One are incorporated here.

2.　　On or about August 12, 2016, in Philadelphia, in the Eastern District of Pennsylvania, defendant

### DONALD DOUGHERTY,

a resident of Philadelphia, made and subscribed to an amended United States Individual Income Tax Return, Form 1040X, for calendar year 2012, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which income tax return defendant DOUGHERTY did not believe to be true and correct as to every material matter. The return identified a false personal taxable income which was derived from improperly claimed business expense deductions totaling approximately $81,700 during 2012, including salary and car expense deductions for his wife's no-show job at Dougherty Electric and deductions for design costs for his wife's New Jersey condominium.

In violation of Title 26, United States Code, Section 7206(1).

## COUNT FOUR
### (Filing a False Federal Income Tax Return)
### 26 U.S.C. § 7206(1)

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.      Paragraphs 1, 2, and 5 through 12, and Overt Acts 1 through 20 of Count One are incorporated here.

      2.      On or about August 12, 2016, in Philadelphia, in the Eastern District of Pennsylvania, defendant

### DONALD DOUGHERTY,

a resident of Philadelphia, made and subscribed to an amended United States Individual Income Tax Return, Form 1040X, for calendar year 2013, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which income tax return defendant DOUGHERTY did not believe to be true and correct as to every material matter. The return identified a false personal taxable income derived from improperly claimed business expense deductions totaling approximately $238,200 during 2013, including approximately $197,700 in salary and car expense deductions for his wife's no-show job at Dougherty Electric and approximately $40,500 in deductions for design costs and furniture for his wife's New Jersey condominium.

      In violation of Title 26, United States Code, Section 7206(1).

## COUNT FIVE
### (Filing a False Federal Income Tax Return)
### 26 U.S.C. § 7206(1)

**THE GRAND JURY FURTHER CHARGES THAT:**

      1.      Paragraphs 1, 2, and 5 through 12, and Overt Acts 1 through 20 of Count One are incorporated here.

      2.      On or about August 12, 2016, in Philadelphia, in the Eastern District of Pennsylvania, defendant

### DONALD DOUGHERTY,

a resident of Philadelphia, made and subscribed to an amended United States Individual Income Tax Return, Form 1040X, for calendar year 2014, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which income tax return defendant DOUGHERTY did not believe to be true and correct as to every material matter. The return identified a false personal taxable income which was derived from improperly claimed business expense deductions totaling approximately $379,800 during 2014, including approximately $178,000 in salary and car expense deductions for his wife's no-show job at Dougherty Electric, $170,300 in deductions for free work performed by DEI for a DOUGHERTY associate, and approximately $31,500 in deductions for personal expenditures including cash withdrawals and home expenses, such as electrical, utility, painting, and insurance costs.

      In violation of Title 26, United States Code, Section 7206(1).

## COUNT SIX
### (Filing a false federal income tax return)
### 26 U.S.C. § 7206(1)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Paragraphs 1, 2, and 5 through 12, and Overt Acts 1 through 20 of Count One are incorporated here.

2.     On or about August 1, 2016, in Philadelphia, in the Eastern District of Pennsylvania, defendant

### DONALD DOUGHERTY,

a resident of Philadelphia, made and subscribed to a United States Individual Income Tax Return, Form 1040, for calendar year 2015, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which income tax return DOUGHERTY did not believe to be true and correct as to every material matter. The return identified a false personal taxable income derived from improperly claimed business expense deductions totaling approximately $411,600 during 2015, including approximately $174,500 in salary and car expense deductions for his wife's no-show job at Dougherty Electric, and approximately $237,100 in deductions for personal expenditures, including a DOUGHERTY family vacation at the Ritz Carlton Hotel in Miami, repairs to DOUGHERTY's home, condominium association fees for his wife's New Jersey condominium, expenses for beer delivery, and $25,000 transferred from the DEI operating account and deposited into defendant DOUGHERTY's personal account.

In violation of Title 26, United States Code, Section 7206(1).

## COUNT SEVEN
### (Filing a False Federal Income Tax Return)
### 26 U.S.C. § 7206(1)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Paragraphs 1, 2, and 5 through 12, and Overt Acts 1 through 20 of Count One are incorporated here.

2.     On or about July 31, 2017, in Philadelphia, in the Eastern District of Pennsylvania, defendant

### DONALD DOUGHERTY,

a resident of Philadelphia, made and subscribed to a United States Individual Income Tax Return, Form 1040, for calendar year 2016, which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which income tax return DOUGHERTY did not believe to be true and correct as to every material matter. The return identified a false personal taxable income derived from improperly claimed business expense deductions totaling approximately $55,500 during 2016, including salary and car expense deductions for his wife's no-show job at Dougherty Electric and deductions for other personal expenditures.

In violation of Title 26, United States Code, Section 7206(1).

## COUNT EIGHT
### (Aiding and Assisting in the Preparation and Presentation of a False and Fraudulent Income Tax Return)
### 26 U.S.C. § 7206(2)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.       Paragraphs 1, 2, and 5 through 12, and Overt Acts 1 through 20 of Count One are incorporated here.

2.       On or about July 27, 2015, in the Eastern District of Pennsylvania, defendant

### MICHAEL MCKALE

willfully aided and assisted the preparation and presentation to the Internal Revenue Service of a false United States Individual Income Tax Return, Form 1040, for defendant DONALD DOUGHERTY for tax year 2014.  The return identified a false personal taxable income which was derived, in part, from approximately $31,500 in false business expense deductions caused by defendant MICHAEL MCKALE's false entries in Dougherty Electric's accounting system, which changed correctly-entered Dougherty Electric shareholder distributions for defendant DOUGHERTY's personal use to Dougherty Electric business expenses.

In violation of Title 26, United States Code, Section 7206(2).

## COUNT NINE
### (Aiding and Assisting in the Preparation and Presentation of a False and Fraudulent Income Tax return)
### 26 U.S.C. § 7206(2)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1, 2, and 5 through 12, and Overt Acts 1 through 20 of Count One are incorporated here.

2.      On or about August 1, 2016, in Philadelphia, in the Eastern District of Pennsylvania, defendant

### MICHAEL MCKALE

willfully aided and assisted the preparation and presentation to the Internal Revenue Service of a United States Individual Income Tax Return, Form 1040, for defendant DONALD DOUGHERTY for tax year 2015.  The return identified a false personal taxable income which was derived, in part, from approximately $237,100 in false business expense deductions caused by defendant MICHAEL MCKALE's false entries in Dougherty Electric's accounting system, which changed correctly-entered Dougherty Electric shareholder distributions for defendant DOUGHERTY's personal use to Dougherty Electric business expenses.

In violation of Title 26, United States Code, Section 7206(2).

## COUNT TEN

### (Aiding and Assisting in the Preparation and Presentation
### of a False and Fraudulent Income Tax Return)
### 26 U.S.C. § 7206(2)

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1, 2, and 5 through 12, and Overt Acts 1 through 20 of Count One are incorporated here.

2.      On or about July 31, 2017, in Philadelphia, in the Eastern District of Pennsylvania, defendant

### MICHAEL MCKALE

willfully aided and assisted the preparation and presentation to the Internal Revenue Service of a United States Individual Income Tax Return, Form 1040, for defendant DONALD DOUGHERTY for tax year 2016.  The return identified a false personal taxable income derived, in part, from approximately $30,500 in false business expense deductions caused by defendant MCKALE's false entries in Dougherty Electric's accounting system, which changed correctly-entered Dougherty Electric shareholder distributions for defendant DOUGHERTY's personal use to Dougherty Electric business expenses, including, among others, family vacation expenditures.

In violation of Title 26, United States Code, Section 7206(2).

## COUNT ELEVEN
### (Bank Fraud)
### 18 U.S.C. § 1344

**THE GRAND JURY FURTHER CHARGES THAT:**

1.  Paragraphs 1 through 4, and 9 and 10 of Count One are incorporated here.

2.  At all times relevant to this Indictment, Wells Fargo was a financial institution located in Philadelphia, Pennsylvania, whose deposits were insured by the Federal Deposit Insurance Corporation, Certificate No. 3511.

3.  Between in or around March 2011 through in or around February 2014, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

### DONALD DOUGHERTY

knowingly executed and attempted to execute a scheme to defraud Wells Fargo, a federally insured financial institution, and to obtain monies owned by and under the care, custody, and control of that financial institution by means of false and fraudulent pretenses, representations, and promises.

### The Scheme

4.  Defendant DONALD DOUGHERTY's scheme was to make false statements and misrepresentations to Wells Fargo Bank concerning his ability to pay the $1,711,382 debt he and his wife, D.D., owed to Wells Fargo on the mortgages for their South Philadelphia residence, for the purpose of reducing the debt owed on the mortgages.

5.  In or about March 2011, defendant DONALD DOUGHERTY and his wife stopped making monthly mortgage payments of $10,366 to Wells Fargo.

6.  Beginning in or about May 2011, defendant DONALD DOUGHERTY repeatedly told Wells Fargo, by email, and during telephone conversations with Wells Fargo personnel, that

he was not financially able to make his mortgage payments. In fact, while he was making these false claims in 2011, defendant DOUGHERTY was earning hundreds of thousands of dollars that year from his electrical contracting business, Dougherty Electric, Inc. In 2011, defendant DOUGHERTY spent in excess of $12,000 on luxury brand clothing and took more than $250,000 in shareholder distributions representing DEI's expenditures for DOUGHERTY's personal benefit, including approximately $30,000 for carpets and furniture for his home and an $8,000 television.

7.      During 2012, while defendant DONALD DOUGHERTY and his wife were not paying their mortgages, Dougherty Electric had gross receipts of $17,021,081, from which defendant DOUGHERTY reported taxable income of $1,401,585 from his salary and corporate earnings from Dougherty Electric.

8.      On or about August 20, 2013, defendant DONALD DOUGHERTY told Wells Fargo by telephone that he wanted to keep his home and offered to pay Wells Fargo $800,000 to settle the $1.7 million debt, an offer declined by Wells Fargo.

9.      On or about August 30, 2013, defendant DONALD DOUGHERTY told Wells Fargo by telephone that the economy caused his construction business to fall behind and that he would send a "hardship" letter to the bank.

10.      On or about September 3, 2013, defendant DONALD DOUGHERTY sent Wells Fargo, by email, a letter that stated, among other things, that the "Great Recession" and the downturn in the economy had been "devastating" to his business, and requested that Wells Fargo consider these "hardships" in an effort to settle his mortgage for much less than he owed.

11.      In 2013, Dougherty Electric had gross business receipts of $27.4 million, from which defendant DONALD DOUGHERTY reported taxable income of $2,436,146. Despite

that, defendant DOUGHERTY told Wells Fargo representatives in telephone calls on or about December 17, 2013 and January 13, 2014 that the most he could offer was $900,000, which he said he would borrow to pay the debt.

12.    On or about January 13, 2014, defendant DONALD DOUGHERTY sent Wells Fargo, by email, a letter nearly identical to the letter he sent in September 2013, which stated, in part, "[t]he hardships and unfortunate circumstances that I have faced have resulted in my inability to pay the loans on my property . . . I trust that you will consider these hardships in our effort to come to an agreement regarding these outstanding loans."

13.    Defendant DONALD DOUGHERTY concealed from Wells Fargo Bank that during a portion of the time that he and his wife were not paying their mortgage and defendant DOUGHERTY falsely repeated that he was unable to do so, his wife had purchased a $907,500 condominium in New Jersey, that he had co-signed a $600,000 promissory note on the condominium, that he had hired his wife to a $166,400 per year no-show job at Dougherty Electric, and that he had caused DEI to spend approximately $850,000 toward the purchase and renovation of the condominium.

14.    On or about February 4, 2014, Wells Fargo accepted defendant DONALD DOUGHERTY's $900,000 settlement offer.

15.    On or about February 25, 2014, after failing to make any payments on the mortgages for three years and repeatedly misrepresenting that he lacked the ability to pay his mortgages, defendant DONALD DOUGHERTY caused a wire transfer of $900,000 to Wells Fargo in settlement of the mortgage debt.

All in violation of Title 18, United States Code, Section 1344.

25

## COUNT TWELVE
### (False Statement to a Bank)
### 18 U.S.C. § 1014

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      Paragraphs 1 through 4, and 9 and 10 of Count One, and paragraphs 2 and 4 through 15 of Count Eleven are incorporated here.

2.      On or about January 13, 2014, in Philadelphia, in the Eastern District of Pennsylvania, and elsewhere, defendant

### DONALD DOUGHERTY

knowingly made, and caused to be made, to Wells Fargo, a false statement for the purpose of influencing the actions of Wells Fargo, specifically, to have Wells Fargo release him from his obligation to pay the $1.7 million mortgage debt on defendant DOUGHERTY's home in Philadelphia and allow him to resolve the debt for a much lesser sum, by falsely claiming that he was unable to pay his loans, when, in fact, during 2013, Dougherty Electric had gross business receipts of $27.4 million, from which DOUGHERTY had personal taxable income of $2,436,146, as reported on his 2013 federal income tax return.

All in violation of Title 18, United States Code, Section 1014.

## COUNTS THIRTEEN THROUGH TWENTY-TWO
### (Theft from Employee Benefit Plans – ERISA)
### 18 U.S.C. § 664

**THE GRAND JURY FURTHER CHARGES THAT:**

At all times material to this Indictment:

1.      Paragraph 1 of Count One is incorporated here.

### Background

2.      From in or about 2014 through in or about 2016, defendant DONALD DOUGHERTY and Dougherty Electric employed union electricians who were members of IBEW Local Union 98, in Philadelphia, and IBEW Local Union 5, located in Pittsburgh, PA. Dougherty Electric was an employer, and Local Unions 98 and 5 were employee organizations, which were engaged in an industry and activity affecting commerce, as those terms are defined in Sections 1002 and 1003 of Title 29, United States Code.

3.      Dougherty Electric was a signatory to and agreed to be bound by collective bargaining agreements (CBAs) between the National Electrical Contractors Association ("NECA"), on behalf of its member employers, and IBEW Local Unions 98 and 5.  These collective bargaining agreements governed various aspects of the labor-management relationship between Dougherty Electric and these unions, including union dues, wages, working conditions, and employment procedures.

4.      Each of the collective bargaining agreements also required Dougherty Electric to: a.) hire union labor from IBEW Local 98 and IBEW Local 5, as set forth in the agreements; b.) submit monthly payroll reports to the local unions and their affiliated employee benefit plans and funds ("the funds") that identified all of Dougherty Electric's employees and the hours worked and wages earned during the reporting period; and c.) make monetary contributions on behalf of

27

the employees to union-sponsored employee benefit plans and connected funds, based upon those employees' working hours and their pay rate and experience, as set forth in the collective bargaining agreements and trust agreements for the union benefit funds. The benefit funds are maintained for the purpose of providing pension, retirement, medical, and other benefits for employees and their families.

5. As the President and sole shareholder of Dougherty Electric, defendant DONALD DOUGHERTY was responsible for the operation and management of Dougherty Electric, which included filing accurate monthly payroll and remittance reports with the unions and their employee benefit plans and making Dougherty Electric's required monthly remittances of monetary contributions to the unions' employee benefit plans and connected funds.

6. Each of the employee benefit plans and funds was subject to Title I of the Employee Retirement Income Security Act of 1974, ("ERISA"), as codified in Title 29, United States Code, Section 1001, *et seq.*, a federal law enacted to protect employee pension and welfare benefit plans and their participants and beneficiaries, by regulating reporting, record keeping, disclosure, and other matters affecting the operation of such plans.

7. The administrators of the employee benefit plans and funds affiliated with Local Unions 98 and 5 were required by ERISA to annually file, with the United States Department of Labor, a financial report (Form 5500 Annual Return/Report of Employee Benefit Plan) on behalf of each plan, and to publish copies of the reports to plan participants, as provided in Section 1024 of Title 29, United States Code. The administrators of the employee benefit plans were also required by ERISA to maintain and keep, as part of the records of each plan, the necessary information on the matters of which disclosure was required, in sufficient detail whereby the

Form 5500 Annual Reports may be verified, explained, clarified and checked for accuracy and completeness.

### Dougherty assents to Local 5's collective bargaining agreement.

8.      In approximately March 2011, Dougherty Electric began work on the first of a number of electrical contracting projects in Pittsburgh, PA.  On or about February 26, 2014, defendant DONALD DOUGHERTY, as the owner of Dougherty Electric, signed an assent letter to a collective bargaining agreement between the Western Pennsylvania Chapter of the National Electrical Contractors Association, Inc. (NECA) and IBEW Local Union No. 5.  Under the assent letter, defendant DOUGHERTY agreed that Dougherty Electric would be bound by the provisions of the current and any subsequent labor agreements between the Western Pennsylvania Chapter of NECA and IBEW Local 5.  These agreements were known as the Inside Collective Bargaining Agreement or Inside Construction Agreement, covering electrical work performed inside buildings and other structures.

9.      Under the collective bargaining agreement with Local 5, Dougherty Electric was required to hire members of Local 5 for the work it was performing in Pittsburgh, and submit payroll reports and make contributions on behalf of its employees to the following IBEW Local Union 5 benefit funds and plans: the Insurance Trust Fund; the Pension Trust Fund; the Apprenticeship-Scholarship Fund; and the Deferred Compensation Plan (hereafter "the Local 5 Benefit Funds" or "benefit funds").

### Dougherty violates the collective bargaining agreement with Local 5.

10.      On or about March 5, 2014, less than one week after he signed the assent letter with Local 5, defendant DONALD DOUGHERTY initiated a scheme to violate the collective bargaining agreement by enlisting a relative, Person A, to form a corporation, GD Labor, Inc.,

("GD Labor"), to pay nonunion employees on Dougherty Electric projects in Pittsburgh for the sole purpose of helping defendant DOUGHERTY avoid making the required employee benefit plan contributions for those employees to the Local 5 benefit funds. Person A incorporated GD Labor in Delaware, and opened a bank account for GD Labor with TD Bank in Mt. Laurel, New Jersey. Thereafter, Dougherty Electric personnel hired the nonunion employees paid by GD Labor and supervised their electrical work at the Dougherty Electric Pittsburgh work sites. Person A never visited the worksites and played no role in hiring or supervising the employees paid by GD Labor.

11.    Person A routinely received the names of the employees and their work hours from a Dougherty Electric supervisor in Pittsburgh. Person A paid wages to those Pittsburgh employees from the GD Labor bank account and sent an invoice to defendant DONALD DOUGHERTY and Dougherty Electric requesting payment from Dougherty Electric. Dougherty Electric then sent a payment to GD Labor and Person A that covered GD Labor's expenditures and provided a profit to Person A.

12.    Neither GD Labor nor Dougherty Electric reported the GD Labor-paid nonunion employees' names and work hours and wages or made the required employee benefit plan remittances of monetary contributions for those employees to the Local 5 Benefit Funds, in violation of the Local 5 collective bargaining agreement.

13.    By using GD Labor to pay his employees from in or about March 2014 to in or about December 2015, defendant DONALD DOUGHERTY defrauded the Local 5 benefit funds of approximately $458,651 in monetary contributions that he should have paid to the Local 5 benefit funds, but instead kept for himself.

14.    In early November 2015, defendant DONALD DOUGHERTY became aware that anonymous letters signed by "Concerned Contractors of S.E. Pennsylvania," which complained about Dougherty Electric's activities, had been distributed to law enforcement and other parties. The letters stated, among other things, that defendant DOUGHERTY was hiring and paying DEI employees who worked in Pittsburgh through a relative's company to avoid paying union benefits.

15.    On or about November 6, 2015, as a result of the letters, defendant DONALD DOUGHERTY was interviewed by Attorney E, an employee of a construction company which had contracted with Dougherty Electric.  Defendant DOUGHERTY admitted to Attorney E that he used nonunion employees in Pittsburgh who were paid by a relative's staffing company, GD Labor.  Defendant DOUGHERTY did not tell Attorney E, however, that he was doing so in contravention of the IBEW Local 5 collective bargaining agreement he had signed, or that he had concealed these employees from Local 5 and was not making employee benefit contributions to the Local 5 benefit funds on their behalf, in contravention of the agreement.

16.    On or about December 7, 2015, approximately one month after defendant DONALD DOUGHERTY learned about the letters described above in paragraph 14, GD Labor ceased paying employees on Dougherty Electric Pittsburgh projects.

17.    Thereafter, from in or about February 2016 through in or about September 2016, at defendant DONALD DOUGHERTY's direction, Dougherty Electric paid the wages of all employees on the Pittsburgh projects, but still did not report all of the DEI employees' work hours and wages to the Local 5 Benefit Funds, and did not make all of the required employee benefit funds contributions.  By doing so, defendant DOUGHERTY defrauded the Local 5

benefit funds of an additional $47,168 in monetary contributions that he should have paid to the Local 5 benefit funds, but instead kept for himself.

18.    In total, for a period of approximately thirty months during in or about March 2014 through in or about September 2016, defendant DONALD DOUGHERTY failed to contribute approximately $505,819 to the Local 5 employee benefit funds on behalf of his Pittsburgh employees.

19.    At times while defendant DONALD DOUGHERTY was violating his collective bargaining agreement with Local 5 in Pittsburgh, defendant DOUGHERTY employed nonunion workers on Philadelphia projects, in violation of his collective bargaining agreement with Local 98, and failed to report the nonunion employees' names and work hours and wages, or make required contributions of approximately $26,400 to the Local 98 benefit funds.

20.    In total, defendant DOUGHERTY kept approximately $532,228 which Dougherty Electric should have contributed to the Local 5 and Local 98 employee benefit funds.

21.    On or about the dates listed below, each date constituting a separate offense, in Philadelphia, in the Eastern District of Pennsylvania, and Pittsburgh, in the Western District of Pennsylvania, defendant

**DONALD DOUGHERTY**

embezzled, stole, and unlawfully and willfully converted to his own use, and caused to be embezzled, stolen, and unlawfully and willfully converted to his own use, the moneys, funds, securities, premiums, credits, property and other assets of IBEW Local 5's employee benefit funds and plans subject to Title I of the Employee Retirement Income Security Act of 1974, ("ERISA"), those being the Insurance Trust Fund, the Pension Trust Fund, the Apprenticeship-Scholarship Fund, and the Deferred Compensation Plan, those funds having been established and

maintained by IBEW Local 5; that is, defendant DOUGHERTY retained remittances that he should have paid to Local 5's employee benefit funds, along with the monthly payroll reports submitted to Local 5 in Pittsburgh, and aided and abetted the same, as follows:

| Count – Report Date | Amount remitted | Amount not remitted |
|---|---|---|
| 13 - 11/22/2015 | $24,551 | $11,125 |
| 14 - 12/27/2015 | $31,512 | $1,541 |
| 15 - 2/21/2016 | $32,122 | $4,158 |
| 16 - 3/27/2016 | $36,235 | $3,882 |
| 17 - 4/24/2016 | $34,516 | $5,399 |
| 18 - 5/22/2016 | $24,072 | $6,095 |
| 19 - 6/26/2016 | $28,133 | $6,727 |
| 20 - 7/24/2016 | $26,169 | $8,099 |
| 21 - 8/26/2016 | $38,830 | $7,133 |
| 22 - 10/7/2016 | $28,460 | $5,670 |
| TOTAL | $304,600 | $59,829 |

All in violation of Title 18, United States Code, Sections 664 and 2.

## COUNTS TWENTY-THREE THROUGH THIRTY-TWO
### (False Statements – ERISA)
### 18 U.S.C. § 1027

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     Paragraph 1 of Count One and paragraphs 2 through 20 of Counts Thirteen through Twenty-Two are incorporated here.

2.     On or about the dates listed below, each date constituting a separate offense, in Philadelphia, in the Eastern District of Pennsylvania, and Pittsburgh, in the Western District of Pennsylvania, in documents required by ERISA to be kept and maintained as part of the records of the IBEW Local 5 Benefit Funds, consisting of monthly payroll and remittance reports submitted on behalf of Dougherty Electric, defendant

### DONALD DOUGHERTY

made, and caused to be made, false statements and representations of fact, and knowingly concealed, covered up, and failed to disclose, and caused to be concealed, covered up and not disclosed, facts on matters required to be disclosed in and which were necessary to verify, explain, clarify and check for accuracy and completeness, annual financial reports [5500 series] required to be filed by the IBEW Local 5 Benefit Funds with the Department of Labor and published to the Benefit Funds' participants', and aided and abetted the same; that is, defendant DOUGHERTY failed to identify, and thus concealed from the Local 5 Benefit Funds, the names of nonunion employees hired and supervised by Dougherty Electric and paid by GD Labor, and nonunion employees supervised and paid by Dougherty Electric, and their work hours performed on work covered by the IBEW Local 5 collective bargaining agreement on Dougherty Electric projects in Pittsburgh, as follows:

34

| Count – Report Date | Work Hours Reported | Work Hours Not Reported |
|---|---|---|
| 23 - 11/22/2015 | 1,220 | 618 |
| 24 - 12/27/2015 | 1,556 | 88 |
| 25 - 2/21/2016 | 1,525 | 217 |
| 26 - 3/27/2016 | 1,727 | 215 |
| 27 - 4/24/2016 | 1,639.50 | 299 |
| 28 - 5/22/2016 | 1,140.50 | 337.5 |
| 29 - 6/26/2016 | 1,363.50 | 372.5 |
| 30 - 7/24/2016 | 1,184 | 436 |
| 31 - 8/26/2016 | 1,552 | 392.5 |
| 32 - 10/7/2016 | 1,144 | 312 |
| TOTAL | 14,051.50 | 3,287.50 |

All in violation of Title 18, United States Code, Sections 1027 and 2.

## COUNTS THIRTY-THREE THROUGH FORTY
### (Theft from employee benefit plans – ERISA)
### 18 U.S.C. § 664

**THE GRAND JURY FURTHER CHARGES THAT:**

1.　　Paragraph 1 of Count One, and paragraphs 2 through 20 of Counts Thirteen through Twenty-Two are incorporated here.

2.　　At times from in or about August 2014 through in or about December 2016, at the direction of defendant DONALD DOUGHERTY, Dougherty Electric employed nonunion labor on Philadelphia projects and failed to report those employees' work hours and wages to Local 98 and the Local 98 benefit funds, and failed to make required employee benefit fund contributions of approximately $26,409 on their behalf to the Local 98 benefit funds, as required by ERISA and the applicable collective bargaining agreement.

3.　　On or about the dates listed below, each date constituting a separate offense, in Philadelphia, in the Eastern District of Pennsylvania, defendant

### DONALD DOUGHERTY

embezzled, stole, and unlawfully and willfully converted to his own use, and caused to be embezzled, stolen, and unlawfully and willfully converted to his own use, approximately $8,582 of the moneys, funds, securities, premiums, credits, property and other assets of IBEW Local 98's employee benefit funds and plans subject to Title I of the Employee Retirement Income Security Act of 1974, ("ERISA"), those being the Health and Welfare Fund and the National Electrical Benefit Fund, those funds having been established and maintained by IBEW Local 98, and aided and abetted the same; that is, defendant DOUGHERTY retained remittances that he should have paid to those Local 98's employee benefit funds, along with the monthly payroll reports submitted to Local 98 in Philadelphia, as follows:

36

| Count –<br>Approx. Report Date | Gross Wages not reported | Amounts not remitted |
|---|---|---|
| 33 - November 2015 | $4,297 | $1,332 |
| 34 - December 2015 | $5,403 | $1,675 |
| 35 - January 2016 | $5,308 | $1,645 |
| 36 - February 2016 | $632 | $195 |
| 37 - June 2016 | $2,401 | $744 |
| 38 - October 2016 | $2,528 | $783 |
| 39 - November 2016 | $3,602 | $1,116 |
| 40 - December 2016 | $3,523 | $1,092 |
| TOTAL | $27,694 | $8,582 |

All in violation of Title 18, United States Code, Sections 664 and 2.

## <u>NOTICE OF FORFEITURE NUMBER ONE</u>

**THE GRAND JURY FURTHER CHARGES THAT:**

1.      As a result of the violations of Title 18, United States Code, Section 664, as set forth in this indictment, defendant

### DONALD DOUGHERTY

shall forfeit to the United States of America any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of such violations, including, but not limited to, the sum of $532,228.

2.      If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

        (a)      cannot be located upon the exercise of due diligence;

        (b)      has been transferred or sold to, or deposited with, a third party;

        (c)      has been placed beyond the jurisdiction of the Court;

        (d)      has been substantially diminished in value; or

        (e)      has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture, including, but not limited to, the sum of $532,228.

All pursuant to Title 28, United States Code, Section 2461(c) and Title 18, United States Code, Section 981(a)(1)(C).

## NOTICE OF FORFEITURE NUMBER TWO

**THE GRAND JURY FURTHER CHARGES THAT:**

1.     As a result of the violations of Title 18, United States Code, Sections 1014 and 1344, as set forth in this Indictment, defendant

### DONALD DOUGHERTY

shall forfeit to the United States of America any property that constitutes, or is derived from, proceeds obtained directly or indirectly from the commission of such violations including, but not limited to:

        (a)     the sum of $811,382: and

        (b)     the property at 109-23 Pierce Street, Philadelphia, PA.

2.     If any of the property subject to forfeiture, as a result of any act or omission of the defendant:

        (a)     cannot be located upon the exercise of due diligence;

        (b)     has been transferred or sold to, or deposited with, a third party;

        (c)     has been placed beyond the jurisdiction of the Court;

        (d)     has been substantially diminished in value; or

        (e)     has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture, including, but not limited to: $811,382.

All pursuant to Title 18, United States Code, Section 982(a)(2).

**A TRUE BILL:**

**FOREPERSON**

_for_ **JENNIFER ARBITTIER WILLIAMS**
**Attorney for the United States,**
**Acting Under Authority Conferred**
    **by 28 U.S.C. § 515**

40

No. _ _ _ _ _ _ _ _

# UNITED STATES DISTRICT COURT

Eastern District of Pennsylvania

Criminal Division

THE UNITED STATES OF AMERICA

vs.

DONALD DOUGHERTY and MICHAEL McKALE

## INDICTMENT

18 U.S.C. § 371 (conspiracy to defraud the United States - 1 count); 26 U.S.C. § 7206(1) (making and subscribing to false federal income tax returns - 6 counts); 26 U.S.C. § 7206(2) (aiding and assisting in the preparation and presentation of false federal income tax returns - 3 counts); 18 U.S.C. § 1014 (false statement to a bank - 1 count); 18 U.S.C. Section 1344 (bank fraud – 1 count); 18 U.S.C. § 1027 (false statements - ERISA - 10 counts); 18 U.S.C. § 664 (theft from employee benefit plans - 18 counts); 18 U.S.C. § 2 (aiding and abetting); Notices of Forfeiture



Filed in open court this _____ day,

Of _____ A.D. 20 _____

_____
Clerk

Bail, $ _____